Susan K. Eggum, OSB No. 824576
Internet e-mail: eggum@cvk-law.com
Shane P. Swilley, OSB No. 053909
Internet e-mail: swilley@cvk-law.com
COSGRAVE VERGEER KESTER LLP
805 SW Broadway, 8th Floor
Portland, Oregon 97205
Telephone:    (503) 323-9000
Facsimile:    (503) 323-9019
Of Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KERI ERICKSON, fka Keri Warr, | Case No.: 3:10-cv-00132-ST |
| Plaintiff, | **DEFENDANT'S REPLY IN** |
| v. | **SUPPORT OF MOTION FOR** |
| | **SUMMARY JUDGMENT** |
| DAIMLER TRUCKS NORTH AMERICA, LLC, a Delaware Limited Liability Company, | |
| Defendant. | |

Defendant Daimler Trucks North America, LLC ("DTNA") offers the following

reply to plaintiff's Memorandum In Opposition To Motion for Summary Judgment.

I.      **PLAINTIFF'S SEXUAL HARASSMENT CLAIM**

      a.   <u>**Garner Did Not Subject Plaintiff To A Tangible Employment Action**</u>

Plaintiff argues that DTNA is strictly liable for sexual harassment by her

supervisor, Dan Garner ("Garner"), because Garner subjected her to tangible

employment actions by allegedly denying her a promotion and forcing her to transfer to

Page 1 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

MDI.  To survive summary judgment, plaintiff must not only show that those tangible

employment actions occurred, but must also present evidence that Garner himself took

those actions against her, or caused those actions to occur.[1]  OAR 839-050-030(4);

*Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1179 (9th Cir. 2001) (the legally relevant

inquiry is not whether the plaintiff ever experienced an employment action, but whether

the supervisor's harassment culminated in a tangible employment action).  *Assuming*

*arguendo* that Garner engaged in sexual harassment, he did not take a tangible

employment action against plaintiff, nor does plaintiff offer any such evidence.

### i.  *There Was No Position in Extended Warranty To Which Plaintiff Could Have Been Promoted*

Plaintiff offers no evidence rebutting or otherwise creating a genuine issue of fact

as to whether there existed in Extended Warranty a position to which she could have

been promoted.  There being no position in Extended Warranty that plaintiff could have

been promoted to, Garner could not have denied her a promotion. DTNA's Statement of

Facts ("Stmt. of Facts"), ¶ 24.

Furthermore, even *assuming arguendo* there was a position she could have been

promoted to, the Ninth Circuit admonishes that plaintiff must prove she applied for a

---

[1] An employer is liable for sexual harassment by a supervisor with immediate or successively higher authority over an individual when the harassment results in a tangible employment action **that the supervisor [Garner] takes or causes to be taken** against that individual.  A tangible employment action includes but is not limited to the following:

(a) Terminating employment, including constructive discharge;

(b) Failing to hire;

(c) Failing to promote; or

(d) Changing a term or condition of employment, such as work assignment, work schedule, compensation or benefits or making a decision that causes a significant change in an employment benefit.

OAR 839-050-030(4) (emphasis added).

Page 2 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

"promotion" before she can claim she was denied a promotion. *Okwuosa v. Employment Dev. Dep't (EDD)*, 143 Fed. Appx. 20, 22 (9th Cir. 2005). It is undisputed that plaintiff made no application for a promotion in Extended Warranty. Indeed, there can be no such evidence as no position existed in Extended Warranty for which plaintiff could have applied.

DTNA does not dispute that Knobeloch and Garner *wanted* to add a position to Extended Warranty. The fact that Garner and his supervisor, Adam Knobeloch, discussed the possibility of a position being created to which plaintiff could be promoted (if she applied) is not evidence that plaintiff was denied a promotion. Knobeloch's and Garner's desire to add a position in Extended Warranty to the department is irrelevant when the undisputed facts are that the position was never created, and that plaintiff therefore never applied for a promotion within Extended Warranty. *See Okwuosa*, 143 Fed. Appx. at 22. Thus, she could not have been denied a promotion.

Lastly, plaintiff argues that a promotion was possible because her replacement in Fort Mill, South Carolina, Ward Tolbert, received a higher starting salary. Plaintiff's conjecture is without merit. Tolbert was hired for the same position as plaintiff – Warranty Analyst.[2] Supplemental Declaration of Angela Ford-Chilton in Support of Defendant's Motion for Summary Judgment ("Supp. Ford-Chilton Decl."), ¶¶ 1-2. If plaintiff had relocated to South Carolina, she, like everyone else at DTNA who relocated, would **not** have received a salary increase. *Id.* at ¶ 4. Tolbert received a

---

[2] Plaintiff argues that Knobeloch's reference in his declaration to Tolbert's position as a "Warranty Analyst II" is evidence that plaintiff would have received a promotion had she stayed in Extended Warranty. Knobeloch described both plaintiff and Tolbert as a "Warranty Analyst II" in his declaration. This designation was a typographical error. The correct title for plaintiff's and Tolbert's position is "Warranty Analyst." Supp. Ford-Chilton Decl., ¶¶ 1-2. Knobeloch's reference to the position as "Warranty Analyst II" instead of "Warranty Analyst" is not evidence that Tolbert was hired for a different position.

Page 3 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

higher annual salary because, unlike plaintiff, he had an MBA. *Id.* at ¶ 3. These are uncontroverted facts.

For the above reasons, plaintiff has failed to present evidence from which a reasonable juror could conclude that Garner denied her a promotion.

### ii. Garner Did Not Transfer Plaintiff

Plaintiff argues Garner and Knobeloch coerced her into transferring to MDI – i.e. that she was "constructively transferred." The claim of constructive transfer has not been recognized by Oregon courts or by courts within the Ninth Circuit. The court should thus reject plaintiff's argument.

Were this court to adopt a claim of constructive transfer, then that claim would be analyzed in the same manner as a constructive discharge claim. *See e.g. White v. Dial Corp.*, 1995 U.S. App. LEXIS 7838 * 14 (7th Cir. 1995) (applying constructive discharge standard to claim of constructive transfer). A constructive discharge is not a tangible employment action sufficient to impose strict liability on an employer for sexual harassment **unless** the employee's own decision to quit was precipitated by an "official act of the employer."[3] *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148-49 (2004); *Jernigan v. Alderwoods Group, Inc.*, 489 F.Supp.2d 1180, 1194-95 (D.Or. 2007).

The term "official act" has the same meaning as an "adverse" or "tangible" employment action. *Suders*, 542 U.S. at 149. "Tangible employment actions are the means by which the supervisor [Garner] brings the official power of the enterprise to

---

[3] The focus of the court's inquiry for this argument is on whether there is evidence that Garner took a tangible employment action that caused plaintiff to transfer to MDI. If the court agrees with the arguments in Section II(b) regarding plaintiff's retaliatory constructive transfer claim, then plaintiff's claim that Garner took a tangible employment action against her by forcing her to transfer also fails as a matter of law.

Page 4 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

bear on subordinates.  A tangible employment decision requires an official act of the

enterprise, a company act." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).

"Tangible employment action" means "changing a term or condition of employment,

such as work assignment, work schedule, compensation or benefits or making a

decision that causes a significant change in an employment benefit."  OAR 839-050-

030(4)(d).  The U.S. District Court for the District of Oregon has recognized that a

supervisor's harassing conduct alone does not qualify as an official act.  *Jernigan*, 489

F.Supp.29 at 1195 (sexual harassment and assault by supervisor are not tangible

employment action).

Plaintiff has not presented any evidence, nor can she, that Garner took an official

act against her, or caused any such action to be taken against her, that precipitated her

application for a position in MDI.  Plaintiff relies on evidence that Garner and Knobeloch

discussed with her the possibility of finding a position for her in another department, if

she felt she could no longer work with Garner; that Garner inquired about a position for

plaintiff in another department; and that, after plaintiff applied for the position in MDI,

Garner helped plaintiff get that position by telling the manager of MDI, Michelle Scasny,

that plaintiff's performance was "stellar."  *See* Plaintiff's Opp. Memo., p. 4.  As a matter

of law, those actions are not "tangible employment actions" because they did not result

in a change in the terms or conditions of plaintiff's employment.   Plaintiff thus fails to

present any evidence creating an issue of material fact as to whether Garner took an

official act that caused her to apply for a promotion in MDI.

Garner's testimony that he *wanted* plaintiff to transfer after she complained to HR

is not evidence of an "official act."  *Suders*, 542 U.S. at 149; *Burlington Indus.*, 524 U.S.

Page 5 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

at 761.  A supervisor's **expression of a desire** that the employee be transferred out of

the department **is not an adverse employment action** when the supervisor does not

have the authority to transfer the employee.  *Lee-Crespo v. Schering-Plough Del*

*Caribe, Inc.*, 354 F.3d 34, 44 (1st Cir. 2003) (emphasis added).[4]  It is undisputed that

Garner had no authority to transfer plaintiff.  Supp. Ford-Chilton Decl. ¶ 5.  Garner's

testimony thus does not create an issue of material fact as to whether he took an

"official act" precipitating plaintiff to transfer to MDI.

### b. DTNA Need Not Prove Plaintiff Failed To Take Advantage Of Preventative or Corrective Opportunities

DTNA seeks summary judgment on plaintiff's claim of sexual harassment based

on the affirmative defense that it took immediate and appropriate corrective action to

remedy the harassment.  OAR 839-005-0030(5).  Plaintiff is wrong in arguing that, to

prevail on its affirmative defense, DTNA must prove plaintiff failed to take advantage of

preventative or corrective opportunities available to her.  DTNA need only prove that it

"took immediate and appropriate corrective action."  OAR 839-005-0030(5)(a).[5]

---

[4] *Lee-Crespo*, 354 F.3d 34 (1st Cir. 2003) does not stand for the proposition asserted by plaintiff at p. 4 of her opposition memorandum.  To the contrary, the court in *Lee-Crespo* granted summary judgment on the plaintiff's claim of retaliatory transfer because the harasser's supervisor (Knobeloch in this case) would have had to approve the transfer.

[5] OAR 839-005-0030(5) establishes the legal standard for plaintiff's sexual harassment claim under ORS 659A.030: "Harassment by Supervisor, No Tangible Employment Action:  When sexual harassment by a supervisor with immediate or successively higher authority over an individual is found to have occurred, but no tangible employment action was taken, **the employer is liable if**:

(a) The employer knew of the harassment, **unless the employer took immediate and appropriate corrective action**.

(b) The employer should have known of the harassment. The division will find that the employer should have known of the harassment unless the employer can demonstrate:

(A) That the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and

Page 6 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**c. DTNA Took Immediate And Appropriate Corrective Action That Remedied The Alleged Harassment**

Plaintiff contends DTNA's remedy of the alleged harassment is inadequate. The court's inquiry, however, is not on whether the remedy was adequate, but **whether the employer took prompt and appropriate steps to remedy the alleged harassment**. *Swenson v. Potter*, 271 F.3d 1184, 1198 (9th Cir. 2001) (where the employer takes prompt steps to stop the harassment, liability cannot be premised on perceived inadequacies in the investigation). Accordingly, the opinion testimony of an HR employee that they believe, in hindsight, that a manager should have handled a complaint of harassment differently is not germane to the court's analysis.

### i. Knobeloch's Response Was Immediate and Appropriate

Plaintiff did not speak with Knobeloch concerning Garner until the end of October 2007. Plaintiff argues that Knobeloch should have taken more remedial action when, in the first week of October 2007, Garner shared with Knobeloch that he told plaintiff that he had feelings for her. However, what Garner shared with Knobeloch was not, as a matter of law, conduct constituting sex harassment.[6] *Assuming arguendo* that Garner did convey to Knobeloch acts of sex harassment, the evidence shows that Knobeloch took immediate and appropriate remedial action at that time.

The Ninth Circuit has recognized that an adequate response includes trying to eliminate contact that is not strictly business-related between the harasser and the

---

(B) That the complaining individual unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm (emphasis added).

[6] Garner did not report conduct to Knobeloch that qualified as "sexual harassment" – i.e. "unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature" or "unwelcome verbal or physical conduct that is sufficiently severe or pervasive to have the purpose or effect of unreasonably interfering with work performance or creating a hostile, intimidating or offensive working environment." OAR 839-050-0030(1)(a) and (b).

Page 7 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

harassed.  *Swenson*, 271 F.3d at 1193 FN 8.  It is uncontroverted that Knobeloch

immediately instructed Garner "to stick to business only, not to talk to her about

personal matters, not to see her outside of work, not to call her on her cell phone, have

no personal contact with her outside of the work environment."  Garner Depo. 176:3-13

(Exhibit 34, p. 2, to the Supplemental Declaration of Susan K. Eggum ("Supp. Eggum

Decl.") filed herewith); Knobeloch Depo. 69:8-21, 72:11-25 (Supp. Eggum Decl. Ex. 35,

p. 2-3).  Knobeloch also told Garner to stop accessing plaintiff's email.  Garner Depo.

174:2-13 (Supp. Eggum Decl. Ex. 34, p. 2).  It is uncontroverted that Knobeloch took

these remedial steps with Garner immediately.  Stmt. of Facts ¶ 7.

        After plaintiff spoke with Knobeloch *for the first time* on October 31, 2007, he

continued to take steps to remedy the situation.  It is uncontroverted that from October

31 to December 10, 2007, Knobeloch was having near weekly conversations with

Garner where he "continually reminded Dan that his professionalism in the workplace

needed to be priority one in getting the work done."  Knobeloch Depo. 76:9-16, 116:11-

25, 160:11-21 (Supp. Eggum Decl. Ex. 35, p. 4, 6-7).  When Garner told Knobeloch he

wanted to talk with plaintiff at work about his feelings, Knobeloch said, "no, we talk

about work in the workplace" and "that as a manager [he] expected [Garner] to stay

professional."  Knobeloch Depo. 77:4-8 (Supp. Eggum Decl. Ex. 35, p. 4).

        When, on December 10, 2007, plaintiff notified Knobeloch that she now wanted

to complain to HR because co-workers saw Garner "finger" items at her desk when she

was not at work, Knobeloch informed HR that same day.  Stmt. of Facts ¶ 15.  Plaintiff

was interview the same day by HR (Stmt. of Facts ¶ 16); Garner's first interview was the

next day (Stmt. of Facts ¶ 17); and Garner was then disciplined within seven business

Page 8 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

days on December 19, 2007, for having non-work related contact with plaintiff, her family, and Rod West.  Knobeloch Decl. ¶ 5; Stmt. of Facts ¶¶ 19-22.  According to the Ninth Circuit, an investigation that is completed with discipline in three to four months qualifies as reasonable.  *Swenson*, *supra*, 271 F.3d 1184.  Here, it is undisputed that seven business days after plaintiff made a complaint, interviews were concluded and Garner was disciplined.   This was a prompt and appropriate response by DTNA *assuming arguendo* that the acts alleged even constitute sexual harassment.

Plaintiff additionally argues that it was Knobeloch, not her, that wanted to avoid making a report to HR.  Plaintiff's deposition testimony is to the contrary.  Plaintiff testified that throughout October 2007 "neither one of us [plaintiff and Knobeloch] thought it was a good idea to go to HR right at that point," and that resolving the situation within the department was the approach **she** wanted to take.  Erickson Depo. 75:6-8, 76:24-77:3 (Eggum Decl. Ex. 1, p. 5); Knobeloch Depo. 83:11-22 (Supp. Eggum Decl. Ex. 35, p. 5).  On November 20, 2007, despite allegedly being harassed by Garner, plaintiff did not want to go to HR because "[y]ou go to HR and that's the end of, you know, me trying to resolve things, you know, between just the group."  Erickson Depo. 92:15-17 (Eggum Decl. Ex. 1, p. 9).  And, for three more weeks, until December 10, 2007, plaintiff "was hoping that [she] wouldn't have to take it to HR."  Erickson Depo. 96:15-21 (Eggum Decl. Ex. 1, p. 10).

Plaintiff's own testimony shows conclusively that she did not want Knobeloch to go to HR, and that Knobeloch acted appropriately in honoring her wishes.  Knobeloch's decision not to himself initiate a complaint with HR, given plaintiff's request, is recognized as a reasonable decision by the Ninth Circuit.  *Hardage v. CBS*

Page 9 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Broadcasting, Inc.*, 427 F.3d. 1177, 1187 FN 1 (9th Cir. 2005) (an employer has no duty to investigate or take other remedial action contrary to the requests of the employee). Plaintiff has not and cannot create an issue of material fact as to whether Knobeloch's response was prompt and appropriate.

### ii. DTNA Promptly And Effectively Remedied The Harassment

The evidence shows that DTNA's prompt discipline of Garner effectively ended what, *assuming arguendo*, constituted harassment. Garner received written discipline on December 19, 2007. Stmt. of Facts ¶ 22. It is undisputed that the next day, December 20, plaintiff was offered a promotion to MDI. She accepted the promotion that same day. The next day, on December 21, 2007, DTNA ceased operations for its annual holiday break ending January 2, 2008. *Id.* at ¶ 25. Plaintiff had no further contact with Garner until she first returned to work on January 7, 2008, to begin her new job in MDI, reporting to her new supervisor, Scasny. *Id.* at ¶¶ 25, 27. Plaintiff then assisted with closing tasks for Extended Warranty until January 23, 2008. *Id.* at ¶ 29.

Plaintiff argues that some of Garner's conduct after she transferred to MDI was sexual harassment and that DTNA failed to remedy that alleged harassment. However, the conduct plaintiff describes during the period she was employed in MDI is not sexual harassment as a matter of law – i.e. "unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature" or "unwelcome verbal or physical conduct that is sufficiently severe or pervasive to have the purpose or effect of unreasonably interfering with work performance or creating a hostile, intimidating or offensive working environment." OAR 839-050-0030(1)(a) and (b); Erickson Depo. 151:5-9 (Eggum Decl. Ex. 1, p. 17). Plaintiff further admitted in her deposition that all contact with Garner after

Page 10 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

she moved to MDI was work-related.  Erickson Depo. 147:20-148:23, 152:24-153:22 (Eggum Decl. Ex. 1, p. 16-17).  Plaintiff's own admission in her deposition underscores that DTNA promptly and adequately remedied the alleged harassment.  Plaintiff has thus presented no evidence that Garner sexually harassed her after she moved to MDI.

Plaintiff also argues that this court can find an issue as to whether DTNA's response to her alleged harassment was prompt and appropriate because DTNA did not find acts of sexual harassment.  However, the Ninth Circuit has made clear that whether an employer finds sex harassment or not is irrelevant to whether its response to a complaint was "prompt and appropriate."  *Swenson*, 271 F.3d at 1202.

Plaintiff also criticizes the fact that HR representative, Duane Watari, had not previously performed a sexual harassment investigation, and that he and HR representative Angela Ford-Chilton did not share their handwritten notes during their investigation.  This perceived inadequacy is immaterial to the court's inquiry.  The Ninth Circuit has made clear that where an employer takes steps to remedy harassment, as was done here, the claimant's view that the investigation was inadequate is no basis for imposing liability.  *Swenson*, 271 F.3d at 1198 ("Where, as here, the employer takes prompt steps to stop the harassment, liability cannot be premised on perceived inadequacies in the investigation").

## II.  PLAINTIFF'S RETALIATION CLAIMS

### a.  There Is No Evidence Plaintiff Was Denied A Promotion In Retaliation For Her Complaints About Garner

As set forth in Section I (b)(2) above, plaintiff's claim that she was denied a promotion must fail because the uncontroverted evidence is that the position to which plaintiff claims she was denied a promotion never existed.  The fact that Garner and

Page 11 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Knobeloch discussed the possibility of a promotion with plaintiff, and that her replacement (Tolbert) was paid more for the same job, does not change the reality that plaintiff could not have been promoted to a non-existent position.  Knobeloch Decl. ¶ 10. And, necessarily, plaintiff therefore never applied for a "promotion" in Extended Warranty.

For these reasons, there is no issue of material fact as to whether plaintiff was denied a promotion in retaliation for complaining about sexual harassment.  DTNA is thus entitled to summary judgment on that claim.

### b. Plaintiff's Claim of Retaliatory Transfer Fails Because There Is No Evidence That Working Conditions Were So Intolerable That A Reasonable Person Would Have No Choice But To Transfer

Plaintiff argues that her choice not to relocate to Fort Mill, South Carolina, but to instead apply for and accept a promotion in MDI with a nine percent pay increase constitutes a retaliatory constructive transfer.[7]  Assuming the court were to adopt a retaliatory constructive transfer claim, plaintiff must prove her working conditions were so intolerable that a reasonable person in the same situation would feel they had no choice but to transfer.  *See White, supra*, 1995 U.S. App. LEXIS 7838 * 14 (constructive discharge analysis applies to claim of constructive transfer).  This is an objective standard, thus evidence of the plaintiff's subjective perception that she had no choice but to transfer is not sufficient to prove her claim.  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 941 (9th Cir. 2009) (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)).

/ / /

---

[7] As explained in Section I(a)(ii) above, the court should reject plaintiff's retaliatory constructive transfer claim because the claim has not been recognized by Oregon courts or by the Ninth Circuit.

Page 12 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

As for the objective evidence, a constructive transfer claim requires a transfer to "a less desirable position with a lower salary, loss of benefits, or with fewer opportunities for salary increases." *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1301 (11th Cir. 2005); *see also Adams v. O'Reilly Auto., Inc.*, 2008 U.S. Dist. LEXIS 85029 * 55 (W.D. Mo. 2008) (no constructive transfer when plaintiff initiated a transfer that did not reduce job title or benefits and resulted in increased pay). It is undisputed that, as a result of her transfer, plaintiff immediately received a nine-percent pay increase at MDI, making moot the need to relocate to Fort Mill, South Carolina to retain her position in Extended Warranty. Stmt. of Fact. ¶ 23; Supp. Ford-Chilton Decl. ¶ 6.

Second, a constructive discharge (or in this case, transfer) will only be found if the circumstances show that the employee was "deprived of free will." *Knappenberger*, 566 F.3d 941-42. An employee is not deprived of free will when they are given a choice not to transfer. *See Knappenberger*, 566 F.3d 941-42. In other words, if the claimant can decide on his or her own to stay in a position, or leave the position, then there is no claim for constructive transfer. *See Knappenberger*, 566 F.3d at 941; *Suders, supra*, 542 U.S. at 147 ("unless conditions are beyond 'ordinary discrimination,' a complaining employee is expected to remain on the job while seeking redress"); *Baylink v. Nicholson*, 329 Fed.Appx. 68, 70 (9th Cir. 2009) ("working conditions must 'deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer'"). It is undisputed that plaintiff was free to apply for another position, or move to South Carolina to stay in Extended Warranty. Plaintiff was never ordered to transfer, or told

Page 13 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

that she would be transferred against her will.  Even when viewed in the light most favorable to plaintiff, the evidence shows that given the company move to South Carolina, plaintiff had to choose between leaving her family in Oregon or applying for a different position.  The notice of the move to South Carolina went out on November 1, 2007.  Stmt. of Facts ¶ 9.  As a matter of law, these facts do not create a genuine issue of fact as to whether plaintiff was constructively transferred to her promotion in MDI.  *See Knappenberger*, 566 F.3d at 941.

Finally, no claim for constructive transfer will lie if the employee transfers while the employer is taking steps to remedy the situation.  *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992) (plaintiff quit while the employer was taking steps to remedy); *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995) (plaintiff failed to give the employer time to work out the issues before quitting).  Plaintiff made a report to HR on December 10, 2007, five days **after** she had applied for the position in MDI.  Stmt. of Fact. ¶ 14.  Plaintiff accepted MDI's offer on December 20, 2007, just ten days after going to HR.  Stmt. of Fact. ¶¶ 15. 23.  She did this while DTNA was taking steps to remedy the situation.   Plaintiff's constructive transfer claim fails as a matter of law.  *Landgraf*, 968 F.2d at 430.

### c. Plaintiff Fails To Establish A Causal Connection Between Her Layoff And Her Protected Conduct

The uncontroverted evidence is that plaintiff was selected for layoff, or involuntary separation ("ISP"), by Mark Epley, in consultation with his supervisor, because the consensus of management was that plaintiff was the overall poorest performing employee in MDI.  Epley Decl. ¶¶ 4, 7-8; Scasny Decl. ¶ 10; McWilliams

Page 14 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Decl. ¶ 9.  It is an uncontroverted fact that Epley did not know of plaintiff's complaints to HR and BOLI until after plaintiff was terminated.  Stmt. of Facts ¶ 53.

### i.  Seniority Was Not a Factor in Plaintiff's Layoff

Whether another employee in MDI had less seniority than her is irrelevant. Seniority was not a factor in selecting employees for ISP.  Epley was instructed to, and did, select employees for ISP based solely on their work performance.  Epley Decl. ¶ 3.

### ii.  Plaintiff Was Not Selected For Layoff Based On Her Statistical Performance

Whether another employee in MDI had lower statistics than plaintiff is irrelevant. It is uncontroverted that Epley's decision to layoff plaintiff was based upon Scasny's recommendation and the comments in plaintiff's LEAD 2009 review.  Epley Dec. ¶ 7. Scasny recommended plaintiff for layoff "based on performance, leadership behavior, and doing the job."  Scasny Depo. 79:21-24 (Brush Decl. Ex. 5, p. 4).  Plaintiff's LEAD 2009 review listed many performance deficiencies based not upon statistics, but on Scasny's observations of poor work performance such as lacking initiative, limited problem solving, and a poor work attitude.  Scasny Decl. Ex. 20, p. 2.  Other managers shared these same opinions of plaintiff's work performance, as recorded in the PPVM notes on plaintiff's LEAD 2009 review. [8]  Scasny Decl. Ex. 20, p. 2.  Additionally, McWilliams told Epley that he too believed plaintiff was the best selection for layoff because of his personal observations of her poor work habits.  McWilliams Decl. ¶¶ 4-9. Plaintiff presents **no** evidence contradicting her managers' opinions of her poor work

---

[8] The PPVM notes identify the following comments made by other DTNA managers during review and approval of plaintiff's LEAD 2009 - "Lacking leadership qualities.  Not demonstrating that she is a potential leader.  Have seen steady decline on her performance.  Need to focus on professional responsibilities."

Page 15 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

performance or the comments in her LEAD 2009 review.[9]  Plaintiff thus failed to show

DTNA's proffered reason for her layoff was pretext.

### iii.  HR's Involvement In The ISP Selection Process Does Not Create An Issue Of Material Fact As To Whether Plaintiff's Layoff Was Retaliatory

The fact that HR reviewed ISP selections made by DTNA managers, including

Epley's selection of plaintiff, does not create a genuine issue of fact as to whether

plaintiff was selected because of her complaints to HR or BOLI.  To the contrary, the

uncontroverted evidence is that HR took plaintiff's complaints seriously, as shown by a

prompt investigation and decision to discipline Garner despite not finding of acts of

sexual harassment on his part.  Furthermore, after learning plaintiff had been selected

for ISP, Employee Relations Specialist, Tony Tam, verified that Epley chose plaintiff for

ISP based on her work performance and not for an impermissible reason, as was done

for all ISP selections.  Stmt. of Fact. ¶ 47.

### iv.  The Temporal Proximity Between Plaintiff's BOLI Complaint And Her Lay Off Does Not Create An Issue of Fact As To Whether DTNA's Reason For Plaintiff's Layoff Was Pretext

To survive summary judgment, plaintiff must present evidence that DTNA's

proffered reason for her lay off was pretext.  *Yartzoff v. Thomas*, 809 F.2d 1371, 1375-

78 (9th Cir. 1987).  Plaintiff relies only on temporal proximity as evidence of pretext, but

temporal proximity alone is not sufficient to prove pretext.[10]  Plaintiff must present

---

[9] This case is not similar to *Staub v. Proctor Hospital*, 562 U.S. __, 2011 WL 691244, 111 FEP 993 (March 1, 2011).  There, the employee had a claim for retaliatory discharge because the deciding official relied upon false performance reviews from supervisors who wanted the employee fired for an unlawful reason.  There is no such evidence in this case.

[10] *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F. Supp. 318 (D. Mass. 1976) did not hold that temporal proximity alone is enough to create an inference of unlawful retaliation. The court held that despite the temporal proximity of the employee's discharge in relation to her protected

Page 16 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

additional evidence that, coupled with temporal proximity, would support a reasonable inference of pretext. *Bell v. Clackamas County*, 341 F.3d 858, 865-66 (9th Cir. 2003) (temporal proximity of seven months plus evidence of supervisors' displeasure with complaints); *Dawson v. Entak Int'l,* 630 F.3d 928. 936-37(9th Cir. 2011) (temporal proximity of three days plus evidence that protected activity was referenced in termination meeting). Since plaintiff proffers no evidence other than temporal proximity, she fails to create any issue of fact as to whether DTNA's reasons for selecting her for layoff were pretext.

### d. Plaintiff Does Not Dispute That Her Claim At Paragraph 18(c) Of Her First Amended Complaint Is Time Barred

Plaintiff does not dispute that her retaliation claim alleged at paragraph 18(c) of her First Amended Complaint is time barred. That claim is conceded.

### e. Plaintiff's Retaliation Claims Alleged at Paragraphs 18(d)-(m) Of Her First Amended Complaint Are Time Barred

It is undisputed that plaintiff's retaliation claims at paragraphs 18(d)-(m) of her First Amended Complaint were filed after the one year limitations periods. This court must therefore decide whether DTNA was put on adequate notice of the claims within the one-year limitations period. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1101-02 (9th Cir 2002). Allegations of discrimination not included in an administrative complaint, but later alleged in a lawsuit after the limitations period expired, are time barred. The sole exception to this rule is where the claims are "like or reasonably related to" the allegations in the administrative complaint received by the employer. *Id.* at 1100.

/ / /

---

activity, the employee failed to establish a claim of unlawful retaliation because she was unable to present sufficient evidence of pretext. Temporal proximity alone was not enough to survive summary judgment.

Page 17 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

To demonstrate timeliness, plaintiff must show that the BOLI Questionnaire and the fifteen page attachment plaintiff submitted to BOLI (Brush Decl. Ex. 1) were provided to DTNA within the limitations period; (2) BOLI had a statutory duty to provide those documents to DTNA but failed to do so; or (3) BOLI was negligent in failing to include those claims in her BOLI complaint.  *See B.K.B.,* 276 F.3d at 1101-02 (pre-complaint questionnaire considered because plaintiff submitted affidavit of EEOC representative stating they intended allegations in EEOC complaint to include claims alleged in the lawsuit, but they erred in omitting them).  Plaintiff has presented no such evidence.  Thus, the court's analysis is limited to comparing the allegations at paragraphs (d)-(m) of Plaintiff's First Amended Complaint with the allegations made in her BOLI complaint (Eggum Decl. Ex. 1, pp. 36-37).  Paragraphs 18(d)-(m) are not "like or reasonably related to" the allegations made in plaintiff's BOLI complaint, but are instead **new** claims of retaliation brought after the limitations period.  *See* Sections II (a)-(c) of Defendant's Supplemental Motion for Summary Judgment.  Those new claims are time barred.  If the court agrees, then it may proceed to Section III below.

### f.  The Conduct Alleged At Paragraphs 18(c)-(m) Is Not Unlawful Retaliation Because It Would Not Deter A Reasonable Person From Engaging In Protected Activity

The conduct alleged at paragraph 18(c)-(m) of plaintiff's First Amended Complaint is not unlawful retaliatory conduct – i.e. conduct "that is reasonably likely to deter protected activity."  OAR 839-005-0033(b).  First, the conduct alleged at paragraphs 18(c)-(f) and (h)-(m) is not, as a matter of law, actionable retaliation because they are complaints of "petty slights, minor annoyances, and simple lack of good manners."  *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. at 68; *Steele*,

Page 18 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

231 Or App at 616.  Furthermore, there is no evidence from which a reasonable juror could conclude those actions would "reasonably likely to deter protected activity."  OAR 839-005-0033(b).  Thus, as a matter of law, the conduct does not qualify as actionable retaliation.

Second, a reasonable juror could not conclude that a "Successful" rating and a score of 100 on an annual review was "so serious that it would dissuade a reasonable employee from bringing a discrimination action."  *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. at 67-68.  Plaintiff received the same "Successful" rating from Garner on her previous year's annual review.  Def. Ex. 30.  Thus, plaintiff's claim that Garner retaliated against her by "reducing the performance rating he gave plaintiff from February 2007 to February 2008" is not a credible claim of retaliation and creates no genuine issue of fact as to whether two "Successful" annual ratings in a row was retaliatory.  First Amended Complaint, ¶ 18(g).

Third, "adverse employment actions that are **not final or lasting** are insufficient to constitute actionable adverse actions."  *Marazzo v. Leavitt*, 719 F.Supp.2d 1297, 1307 (D.Or. 2010) (emphasis added).  Plaintiff presents no evidence that any of the conduct alleged at paragraphs 18(c)-(m) was final or lasting.

Finally, it is undisputed that the conduct alleged at paragraphs 18(c)-(m) did not deter plaintiff from complaining to HR or to BOLI.  Stmt. of Facts, ¶¶ 7, 10, 15-16, 18, 21, 35.  When the alleged retaliatory conduct does not deter the plaintiff from continuing to oppose discrimination, then it is unlikely the conduct would deter a reasonable person from engaging in protected activity.  *Steele*, 231 Or App at 617; *Somoza v. Univ. of*

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

*Denver*, 513 F.3d 1206, 1218 (10th Cir. 2008) (fact that employee was undeterred in pursuing a remedy is evidence actions were not sufficiently adverse to be retaliation).

For the above reasons, DTNA is entitled to summary judgment on plaintiff's claims of retaliation alleged at paragraph 18(c)-(m) of her First Amended Complaint.

### g.  Plaintiff Fails To Present Evidence That She Was Subjected To A Retaliatory Hostile Work Environment

Plaintiff fails to establish a *prima facie* hostile work environment claim.  She has **not** presented evidence of **specific instances of retaliation**.  *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997); *Hector v. Potter*, 2010 U.S. Dist. LEXIS 135308, 29-30 (S.D.Cal. 2010).  In a flourish of rhetoric, plaintiff claims there are "reams of documentary evidence and of Plaintiff's, Garner's and others' deposition testimony establishing that Garner's aggressive mistreatment of Plaintiff . . . was sufficiently severe or pervasive to alter the terms or conditions of her employment and create an intimidating, hostile, offensive, or abusive work environment."  Plaintiff's Opposition Memo, p. 30.  An assurance that such evidence exists, without providing any of it to the court, is not sufficient to defeat summary judgment.

Plaintiff does point to her generalized allegations of retaliation set forth in paragraph 18(a)-(l) of her First Amended Complaint to suggest to the court what the evidence at trial might be.  However, the Ninth Circuit admonishes that a promise of evidence to support allegations in a complaint does not and cannot demonstrate material issues of fact sufficient to defeat summary judgment.  *See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir 1987) (the nonmoving party must produce "at least some significant probative evidence tending to support its claim and cannot just state that it will discredit the moving party's

Page 20 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

evidence and proceed in the hope that something can be developed at trial in the way of evidence to support its claim").  Since plaintiff failed to produce any evidence of **specific instances of retaliation** sufficiently severe or pervasive to create a hostile work environment, DTNA is entitled to summary judgment on plaintiff's claim of a retaliatory hostile work environment.

III.    **PLAINTIFF FAILS TO PRESENT EVIDENCE SUFFICIENT TO SUPPORT CLAIMS FOR PUNITIVE DAMAGES**

   a.  **Plaintiff Fails To Present Evidence To Support Her Claim For Punitive Damages As Part Of Her Sexual Harassment Claim**

As explained in DTNA's Memorandum in Support of Its Supplemental Motion for Summary Judgment at pp. 12-14, punitive damages are not available where, as here, the uncontroverted evidence shows the employer engaged in good faith efforts to comply with laws against discrimination, such as having anti-harassment policies and taking steps to enforce those policies. *Jernigan*, 489 F.Supp.2d at 1205.  It is undisputed that DTNA took steps to enforce its anti-harassment policies.

Plaintiff argues that punitive damages should nevertheless be allowed for the jury to consider because Knobeloch did not immediately go to HR with plaintiff's complaint of October 31, 2007.  This fact, however, is an insufficient basis upon which reasonable jurors could conclude that Knobeloch's decision to honor plaintiff's request not to go to HR was a decision motivated by malice, a reckless and outrageous indifference to a highly unreasonable risk of harm, or with a conscious indifference to the health, safety and welfare of plaintiff.  ORS 31.730(1).  To the contrary, as explained in Section I(d)(i) above, the uncontroverted evidence is that Knobeloch was honoring plaintiff's requests

Page 21 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

not to involve HR.  On December 10, 2007, when she told Knobeloch she was going to

HR with a complaint, he immediately reported the situation.

### b.  Plaintiff Fails To Present Evidence To Support A Claim For Punitive Damages As Part Of Her Retaliation Claim

Plaintiff does not allege in her First Amended Complaint a claim for punitive

damages as part of her retaliation claim.  Plaintiff is precluded from now arguing that

she is entitled to punitive damages as part of that claim.  And even if plaintiff had

alleged a claim for punitive damages as part of her retaliation claim, she has presented

no evidence to support such a claim.  Plaintiff instead relies on the allegations at

paragraph18 of her First Amended Complaint as "evidence" sufficient to support a claim

for punitive damages.  Even assuming allegations in a complaint are evidence, as

explained in Section II above, that conduct is not sufficient to rise to the level of

actionable retaliation.  A reasonable juror could **not** conclude from that conduct that

DTNA "acted with malice or has shown a reckless and outrageous indifference to a

highly unreasonable risk of harm and has acted with a conscious indifference to the

health, safety and welfare of others."  ORS 31.730(1).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 22 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

III.    **CONCLUSION**

This court should grant summary judgment for DTNA on all of plaintiff's claims for relief.   DTNA has shown through uncontroverted evidence that it promptly and adequately remedied the harassment plaintiff alleges she suffered, and that plaintiff's retaliation claims fail as a matter of law.

DATED: June 6, 2011.

Susan K. Eggum, OSB No. 824576
Shane P. Swilley, OSB No. 053909
Telephone: (503) 323-9000
Fax: (503) 323-9019
E-mail: eggum@cvk-law.com
            swilley@cvk-law.com
Of Attorneys for Defendant
Trial Attorney: Susan K. Eggum, OSB No. 824576

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000